**CHADBOURNE & PARKE LLP**
Counsel for the Petitioners
1301 Avenue of the Americas
New York, New York 10019
(212) 408-5215
Howard Seife
Francisco Vazquez
Eric Daucher

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ----------------------------------------------------------- x | | |
| In re | : | |
| | : | |
| OIC RUN-OFF LIMITED | : | In a Case Under Chapter 15 |
| | : | of the Bankruptcy Code |
| | : | |
| Debtor in a Foreign Proceeding. | : | Case No. 15-13054 |
| ----------------------------------------------------------- x | | |
| In re | : | |
| | : | |
| THE LONDON AND OVERSEAS INSURANCE | : | In a Case Under Chapter 15 |
| COMPANY LIMITED | : | of the Bankruptcy Code |
| | : | |
| | : | |
| Debtor in a Foreign Proceeding. | : | Case No. 15-13055 |
| ----------------------------------------------------------- x | | |

**MEMORANDUM OF LAW IN SUPPORT OF VERIFIED PETITION UNDER CHAPTER 15 OF THE BANKRUPTCY CODE FOR RECOGNITION OF FOREIGN MAIN PROCEEDINGS, A PERMANENT INJUNCTION AND RELATED RELIEF**

Dan Yoram Schwarzmann and Paul Anthony Brereton Evans (the "Petitioners"), as duly authorized foreign representatives as defined in section 101(24) of title 11 of the United States Code (the "Bankruptcy Code") of OIC Run-Off Limited (subject to a scheme of arrangement) ("Orion") and The London and Overseas Insurance Company Limited (subject to a scheme of arrangement) ("L&O," together with Orion, the "Companies"), by their United States counsel, Chadbourne & Parke LLP, respectfully submit this Memorandum of Law in support of the Verified Petition under Chapter 15 of the Bankruptcy Code for Recognition of Foreign Main

Proceedings, a Permanent Injunction, and Related Relief, filed contemporaneously herewith (the "Verified Petition").[1] In support thereof, the Petitioners respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Companies are insurance and reinsurance companies incorporated in England and Wales.  In 1992, the Companies ceased writing new business and went into run-off.  When insurance or reinsurance companies enter into run-off, they cease writing new business and seek to determine, settle and pay all liquidated claims of their insureds either as they arise or, if possible, before they arise.  To facilitate their run-off, the Companies implemented the Original Scheme.  The Original Scheme is a reserving scheme of arrangement, also known as a run-off scheme, pursuant to which the Companies' business is being run-off in the ordinary course. Under the Original Scheme, Scheme Creditors are paid a percentage of their claims as and when they become established.  Those Scheme Creditors that have the benefit of a guarantee from the Companies' parent company (i.e., Qualifying ILU Policyholders) receive an additional payment(s) from the Companies up to the full amount of the Scheme Creditor's Qualifying Established Liabilities.  In addition, Protected Policyholders receive payments from the PPB or its successor in accordance with English law.

2.      Following the High Court's sanction of the Original Scheme, this Court issued the Permanent Injunction Order dated March 6, 1997 under former section 304 of the Bankruptcy Code (the "Permanent Injunction"), pursuant to which the Original Scheme was given full force

---

[1]     All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Verified Petition.

and effect and made binding on and enforceable against all Scheme Creditors in the United States.[2]

3.    The Companies have been in run-off for approximately 23 years and subject to the Original Scheme for approximately 18 years.    During the run-off, the majority of the Companies' liabilities have been agreed.    Most of the remaining liabilities are long-tail and may not crystallize into quantifiable claims for many years.

4.    The Petitioners, as Scheme Administrators, have concluded that it would be in the interests of the Scheme Creditors to implement the Amending Scheme.    The Amending Scheme is a crystallization scheme of arrangement, pursuant to which the Companies' remaining liabilities, subject to certain exceptions, will be estimated and paid the Payment Percentage.    In addition to the Payment Percentage, those Scheme Creditors that are Qualifying ILU Policyholders will, subject to satisfying certain conditions, receive further payments under the Amending Scheme.

5.    By an order dated October 8, 2014 (the "Convening Order"), the High Court (i) granted leave to the Companies to convene meetings of Scheme Creditors for the purpose of considering and, if thought fit, approving the Amending Scheme (the "Meetings"), and (ii) confirmed that the Petitioners are the foreign representatives for the purpose of filing petitions under Chapter 15 for recognition of the proceedings pending before the High Court concerning the Amending Scheme (the "English Proceedings") and requesting orders enforcing the

---

[2]    Prior to October 17, 2005, ancillary bankruptcy proceedings were governed by former section 304 of the Bankruptcy Code.    Accordingly, the proceedings before this Court in respect of the Original Scheme were governed by former section 304.    Those ancillary proceedings were closed on September 22, 1997.    On April 20, 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Act") was enacted.    The Act contained a number of amendments to the Bankruptcy Code, including (then new) Chapter 15.    Chapter 15 replaced section 304 with respect to all ancillary cases, such as these, filed on or after October 17, 2005.

CPAM: 6413012.33

Amending Scheme in the United States and granting additional relief under Chapter 15 of the Bankruptcy Code.

6.      In accordance with the Convening Order, the Meetings occurred on December 11, 2014.  During the Meetings, the requisite majorities of each class of Scheme Creditors of the Companies voted in favor of the Amending Scheme.  Accordingly, the Companies submitted the Amending Scheme to the High Court for sanction.  By order dated October 29, 2015 (the "Sanction Order"), the High Court sanctioned the Amending Scheme.  The Amending Scheme will become effective, and thereby binding on all Scheme Creditors of the Companies wherever located, upon delivery of the High Court's order sanctioning the Amending Scheme to the Registrar of Companies in England and Wales (the "Registrar").[3]

7.      By the Verified Petition, the Petitioners seek an order of this Court, substantially in the form of the proposed Order Granting Recognition of Foreign Main Proceedings, a Permanent Injunction and Related Relief (the "Proposed Order"), a copy of which is attached to the Verified Petition as Exhibit "F," (i) granting recognition of the English Proceedings; (ii) enforcing the Amending Scheme in the United States; and (iii) granting other relief necessary to ensure the effective implementation of the Amending Scheme in the United States.

8.      Chapter 15 of the Bankruptcy Code, among other things, authorizes this Court to: (i) recognize a foreign proceeding upon the proper commencement of a case under Chapter 15 by a foreign representative, as defined in section 101(24) of the Bankruptcy Code; and (ii) grant assistance in the United States to such foreign representative in connection with the foreign

---

[3]   This Court's issuance of an order enforcing the Amending Scheme in the United States in a form satisfactory to the Petitioners is a condition precedent to the implementation of the Amending Scheme.  Therefore, delivery of the Sanction Order to the Registrar will only occur if and when this Court issues an order substantially in the form of the Proposed Order.

CPAM: 6413012.33

proceeding, including by granting appropriate relief pursuant to section 1521 of the Bankruptcy Code.

9.    The Verified Petition satisfies all of the requirements set forth in section 1515 of the Bankruptcy Code and the Companies are eligible to be debtors under section 109(a) of the Bankruptcy Code.  Accordingly, this Court should grant recognition to the English Proceedings. Moreover, given that the relief requested herein is necessary to give effect to the Amending Scheme, the relief requested is appropriate under Chapter 15 of the Bankruptcy Code.  Granting the relief requested, including enforcement of the Amending Scheme in the United States, is consistent with the goals of international cooperation and providing assistance to foreign courts, embodied in Chapter 15 of the Bankruptcy Code.  Further, the relief requested is consistent with the relief afforded by the Court in other ancillary proceedings and cases involving foreign insurance companies, both under former section 304 and Chapter 15 of the Bankruptcy Code.

## FACTS

10.    The Court is respectfully referred to the Verified Petition, which contains the relevant facts, all of which are incorporated herein by reference.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (Preska, Loretta C.J.), dated January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

12.    Venue is properly located in this District pursuant to 28 U.S.C. § 1410.

5

## ARGUMENT

**I.     The Companies Are Eligible to be Debtors
        under Section 109(a) of the Bankruptcy Code**

13.     The Companies are eligible to be debtors under section 109(a) of the Bankruptcy

Code because they both possess property in the United States.  In this Circuit, an entity must be

eligible to be a debtor under section 109(a) before its foreign proceeding can be granted

recognition under Chapter 15.  See Drawbridge Special Opportunities Fund LP v. Barnet (In re

Barnet), 737 F.3d 238, 247 (2d Cir. 2013) ("Section 109 . . . applies 'in a case under chapter

15.'").  Section 109(a) states, in relevant part, that "only a person that resides or has a domicile, a

place of business, or property in the United States . . . may be a debtor under this title."  11

U.S.C. § 109(a).  If a debtor has any property in the United States, section 109(a) is satisfied.

See In re Octaviar Administration Pty Ltd., 511 B.R. 361, 373 (Bankr. S.D.N.Y. 2014) ("[T]he

Court must abide by the plain meaning of the words in the statute.  Section 109(a) says, simply,

that the debtor must have property; it says nothing about the amount of such property . . . ."); see

also In re Suntech Power Holdings Co., Ltd., 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014) (same);

In re McTague, 198 B.R. 428, 432 (Bankr. W.D.N.Y. 1996) (section 109(a) "leave[s] the Court

no discretion to consider whether it was the intent of Congress to permit someone to obtain a

bankruptcy discharge solely on the basis of having a dollar, a dime or a peppercorn located in the

United States").

14.     The Companies satisfy section 109(a)'s requirements because they each have

property in the United States consisting of: (i) funds held in a bank account located in this

District; (ii) undrawn retainers in bank accounts in this District; and (iii) reinsurance

recoverables due from entities located in the United States.  See Verified Petition ¶¶ 69-70.

Accordingly, the Companies are eligible to be debtors under Chapter 15.  See In re Octaviar

6

<u>Administration Pty Ltd.</u>, 511 B.R. at 373-74 (noting that funds held in a retainer account satisfy section 109(a)); <u>see also</u> 11 U.S.C. § 1502(8).

**II.    These Cases are Proper under Chapter 15**

15.    Chapter 15 of the Bankruptcy Code provides a mechanism for a foreign representative to obtain, in the United States, recognition of, and assistance for, a foreign proceeding.    <u>See</u> 11 U.S.C. § 1501(b)(l).    Chapter 15 recognition shall be granted if: (a) recognition is sought for a "foreign proceeding" that qualifies as either "foreign main" or "foreign nonmain"; (b) recognition is sought by a "foreign representative"; and (c) the Chapter 15 petition meets certain procedural requirements.    <u>See</u> 11 U.S.C. § 1517(a).    The legislative history to Chapter 15 provides that:

> The decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code. The requirements of [section 1517], which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition.

H.R. REP. 109-31, pt. 1 (2005).    Thus, recognition under sections 1517(a) and (b) of the Bankruptcy Code is mandatory where, as here, a Chapter 15 petition meets the statutory requirements.

A.    <u>The English Proceedings are Foreign Proceedings</u>

16.    The English Proceedings are foreign proceedings entitled to Chapter 15 recognition.    A foreign proceeding has seven elements:

> (i) [the existence of] a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign country; (v) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation.

7

In re Ashapura Minechem Ltd., 480 B.R. 129, 136 (Bankr. S.D.N.Y. 2012) (quoting In re Betcorp Ltd., 400 B.R. 266, 277 (Bankr. D. Nev. 2009)) (alteration in original); see also In re ABC Learning Centres Ltd., 445 B.R. 318, 327 (Bankr. D. Del. 2010), aff'd, 728 F.3d 301 (3d Cir. 2013) (citation omitted) (identifying the same seven elements); see 11 U.S.C. § 101(23).

       i.    *The English Proceedings are "Proceedings"*

17.    First, the English Proceedings are "proceedings." For the purpose of Chapter 15 recognition, "the hallmark of a 'proceeding' is a statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets." Betcorp, 400 B.R. at 278. Here, the relevant statutory framework is provided by the Companies Act 2006 (the "Companies Act"). As described in the Declaration of Joseph Bahlsen Bannister, English legal counsel to the Companies dated November 16, 2015 (the "Bannister Declaration"), the Companies Act governs the process for proposing, obtaining sanction of, and implementing a scheme of arrangement, such as the Amending Scheme. See Bannister Declaration ¶¶ 4-9. Because the English Proceedings are operating under that framework, they are "proceedings" within the meaning of 11 U.S.C. § 101 (23).

       ii.    *The English Proceedings are Judicial in Character*

18.    Second, the English Proceedings are judicial in character. When analyzing a scheme of arrangement under an analogous companies law, this Court has explicitly held that "[t]here is significant judicial involvement in this scheme process." Hopewell, 238 B.R. at 52. As described in the Bannister Declaration, the High Court exercises significant judicial oversight in the English Proceedings and is instrumental to the implementation of the Amending Scheme. The process for implementing the Amending Scheme began when the Petitioners filed an application with the High Court seeking the issuance of the Convening Order. See Bannister Declaration ¶ 29. Creditors then had the right to object to the Amending Scheme at a hearing

8

held before the High Court, but none did so.    Consequently, the High Court issued the Convening Order, which directed the Companies to convene the Meetings that were held on December 11, 2014.    <u>See</u> Bannister Declaration ¶ 29.    On October 29, 2015, the High Court conducted a second hearing at which the High Court considered an application to sanction the Amending Scheme.    During that hearing, creditors had another opportunity to object to the Amending Scheme.    <u>See</u> Bannister Declaration ¶ 9.    Pursuant to the Sanction Order, the High Court sanctioned the Amending Scheme.    Absent the High Court's sanction, the Companies cannot implement the Amending Scheme.    <u>See</u> Bannister Declaration ¶ 5(b).    The English Proceedings thus have a fundamentally judicial character.

iii.    <i>The English Proceedings are Collective in Nature</i>

19.    Third, the English Proceedings are collective in nature.    "A proceeding is collective in nature if it 'considers the rights and obligations of all creditors.'"    <u>In re Ashapura Minechem Ltd.</u>, No. 11–14668, 2011 WL 5855475, at *3 (Bankr. S.D.N.Y. Nov. 22, 2011) (quoting <u>Betcorp</u>, 400 B.R. at 281); <u>see also</u> <u>ABC Learning Centres</u>, 445 B.R. at 328 (same). "The 'collective proceeding' requirement is intended to limit access to Chapter 15 to proceedings which benefit creditors generally and to exclude proceedings which are for the benefit of a single creditor." 8 Collier on Bankruptcy ¶ 1501.03[1], 1501-7 (Alan N. Resnick & Henry J. Sommer eds., 16th    ed.).    Here, the English Proceedings are collective because they benefit creditors generally.    All Scheme Creditors were afforded the opportunity to attend the Meetings and vote on the Amending Scheme and, if desired, could have lodged an objection to the sanctioning of the Amending Scheme.    <u>See</u> Bannister Declaration ¶ 9.    After being sanctioned by the High Court in the English Proceedings and becoming effective, the Amending Scheme will be binding

9

on all Scheme Creditors.[4]   See Bannister Declaration ¶ 35.   Therefore, the English Proceedings are collective in nature.

           iv.   *The English Proceedings are Pending in a Foreign Country*

20.   Fourth, the English Proceedings are pending in a foreign country.   The Companies are English insurance and reinsurance companies.   See Verified Petition ¶¶ 12, 15.   The Companies' registered offices are located at 10-18 Union Street, London, SE1 1SZ, England. See Verified Petition ¶¶ 14, 17.   The Petitioners themselves are located in England and are managing the Companies' run-off under the Original Scheme pursuant to English law.   See Verified Petition ¶¶ 31-32; Bannister Declaration ¶¶ 4-5, 14-18.   The Meetings were authorized by the High Court in England.   See Verified Petition Ex. D.   The Meetings were conducted at 1 Embankment Place, London, WC2N 6RH, England.   See Verified Petition ¶ 38.   Ultimately, the Amending Scheme was sanctioned by the High Court in London.   Therefore, there should be no dispute that the English Proceedings are located in England, a foreign country.

           v.   *The English Proceedings are Occurring under*
                  *a Law Relating to Insolvency or Adjustment of Debt*

21.   Fifth, the English Proceedings were initiated under a law relating to insolvency or adjustment of debt.   The English Proceedings were commenced under the Companies Act, which contains provisions addressing the insolvency, liquidation or reorganization of English companies.   See Bannister Declaration ¶ 4.   Moreover, the Companies Act provides for the

---

[4]   Although the terms of the Amending Scheme will generally govern the claims of all Scheme Creditors, Qualifying ILU Policyholders may opt out of the crystallization and payment provisions of the Amending Scheme.   See Verified Petition ¶ 56.   The crystallization and payment of claims of Qualifying ILU Policyholders who opt out of the Amending Scheme will continue to be governed by the terms of the Original Scheme.   See id.

CPAM: 6413012.33

implementation of schemes of arrangement to address claims against a company, and "to permit an orderly closure of all, or a portion of, a company's business." Bannister Declaration ¶ 5.

22.     There are no reported decisions addressing whether the Companies Act is a law relating to insolvency or adjustment of debt.  The Companies Act, however, bears all the hallmarks of a law relating to insolvency or the adjustment of debt—in particular, the Companies Act provides for the winding down of a company's business.  See, e.g., In re British Am. Ins. Co. Ltd., 425 B.R. 884, 905 (Bankr. S.D. Fla. 2010) (finding that the Bahamas Insurance Act and the Saint Vincent and the Grenadines Insurance Act, which provide for the adjustment of debt through a winding up of a company's operations, were laws relating to insolvency or adjustment of debt).  Consequently, the Companies Act is a law relating to insolvency or the adjustment of debt and courts in this District have granted recognition to proceedings pending under the Companies Act.  See In re Global General and Reinsurance Company Limited, No. 11-10327 (RDD) (Bankr. S.D.N.Y. March 10, 2011) (granting recognition under Chapter 15 to a proceeding under the Companies Act); In re Baloise Ins. Ltd., No. 10-15358 (JMP) (Bankr. S.D.N.Y. Dec. 9, 2010) (same); cf. ABC Learning Centres, 445 B.R. at 331 ("Numerous subsections within the [Australian] Corporations Act address corporate insolvency and the adjustment of corporate debt."); In re Betcorp, 400 B.R. at 282-83 (holding that a corporation engaged in a voluntary winding-up under the Australian Corporations Act is being administered under a law relating to insolvency).

> vi.     *The English Proceedings Subject the Companies' Assets and Affairs to a Foreign Court's Control or Supervision*

23.     Sixth, the English Proceedings subject the Companies' assets and affairs to a foreign court's control or supervision.  In the English Proceedings, the High Court possessed the authority to sanction (or decline to sanction) the Amending Scheme and thereby determine

whether the Companies' assets and affairs will be subject to the Amending Scheme.  <u>See</u> Bannister Declaration ¶ 35.  In this instance, the High Court issued the Sanction Order, thereby subjecting the Companies' assets and affairs to the Amending Scheme once it becomes effective. Moreover, the Amending Scheme provides that the High Court has the exclusive jurisdiction to hear and determine any suit, action, claim, or proceeding and to settle any dispute that may arise out of any action taken or omitted to be taken under the Amending Scheme or in connection with the administration of the Amending Scheme.  <u>See</u> Verified Petition ¶ 43.

vii.   <i>The English Proceedings are for the Purpose of Liquidation</i>

24.    Finally, the English Proceedings are for the purpose of liquidation.  <u>Cf.</u> <u>In re ABC Learning Centres</u>, 445 B.R. at 332 ("The express purpose of winding up proceedings . . . is the orderly liquidation of the subject business.").  The purpose of the Amending Scheme is to complete the run-off of the Companies in the most expeditious and cost-effective manner practicable.  In particular, the "Petitioners believe that the Amending Scheme will result in (i) a reduction of run-off costs,[5] (ii) an increase in the amount of assets available for distribution to Scheme Creditors in the form of an estimated higher Payment Percentage, and (iii) valuation of all Scheme Liabilities and payments to Scheme Creditors earlier than would otherwise be possible."  Verified Petition ¶ 34.  Moreover, "[w]hen all amounts available for payment by the Companies under the Original Scheme and the Amending Scheme have been paid, the Companies will go into liquidation and the Original Scheme, as amended by the Amending

---

[5]   The Petitioners estimate that, absent the implementation of the Amending Scheme, the total run-off costs for the period from 2014 to 2035 could reach $200 million (or more).  By introducing a mechanism to establish future liabilities, the Amending Scheme would reduce a significant portion of these future run-off costs.

12

Scheme, will be terminated."  Bannister Declaration ¶ 22.  As such, the ultimate purpose of the English Proceedings is to liquidate the Companies and distribute their assets to their creditors.

       B.     <u>The Cases were Commenced by a Foreign Representative</u>

     25.     These Chapter 15 cases were commenced by duly appointed and authorized "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code, which states:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

     26.     As demonstrated by the evidence submitted on behalf of the Petitioners, including the Bannister Declaration and the Convening Order, the Petitioners are duly authorized to act as the Companies' and the English Proceedings' foreign representatives in these Chapter 15 cases. In particular, the Convening Order specifically states that each of the Petitioners "have been duly appointed as, and are, the foreign representatives of the pending proceedings concerning the Amending Scheme for the purpose of filing petitions for recognition of the pending proceedings and requesting orders enforcing the Amending Scheme and granting additional relief with the United States Bankruptcy Court under Chapter 15 of the United States Bankruptcy Code." <u>See</u> Verified Petition Ex. D p. 7.

       C.     <u>These Chapter 15 Cases were Properly Commenced</u>

     27.     These Chapter 15 cases were duly and properly commenced as required by sections 1504 and 1509 of the Bankruptcy Code by the filing of petitions for recognition of foreign proceedings under section 1515(a) of the Bankruptcy Code, accompanied by all documents and information required by section 1515(b) and (c). <u>See</u> <u>In re Bear Stearns High-</u>

Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007), aff'd, 389 B.R. 325 (S.D.N.Y. 2008) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code."). The Petitioners properly commenced these Chapter 15 cases because the Verified Petition satisfies the requirements set forth in section 1515 of the Bankruptcy Code.

**III.    The English Proceedings Should be Recognized as Foreign Main Proceedings**

28.    The English Proceedings should be recognized as foreign main proceedings. A foreign proceeding must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has its center of main interests ("COMI"). See 11 U.S.C. §§ 1502(4), 1517(b)(1). The English Proceedings are foreign main proceedings because they are pending in England, which, as described below, is where the Companies' respective COMIs are located.

29.    A company's COMI is presumed to be wherever its registered office is located. See Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.), 714 F.3d 127, 137 (2d Cir. 2013) (citing 11 U.S.C. § 1516(c)) ("Chapter 15 creates a rebuttable presumption that the country where a debtor has its registered office will be its COMI . . . ."). Here, the Companies' registered offices are located in England. See Verified Petition ¶ 1(b). Accordingly, England is presumed to be the Companies' respective COMIs. While that presumption is rebuttable, see In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122, 130 (Bankr. S.D.N.Y. 2007), aff'd, 389 B.R. 325 (S.D.N.Y. 2008), there is no reason for the Court to reject that presumption in these cases.

30.    According to the United States Court of Appeals for the Second Circuit, "a court may certainly consider a debtor's 'nerve center,' including from where the debtor's activities are directed and controlled, in determining a debtor's COMI." In re Fairfield Sentry Ltd., 714 F.3d at 138, n.10; see also Bear Stearns, 374 B.R. at 130 (noting that debtors' center of main interests

14

is where the debtors "conduct the administration of their interests on a regular basis and is therefore ascertainable by third parties.").[6] The Companies' respective COMIs are in England because that is the location of the Companies' "nerve center" and is the jurisdiction where the Petitioners are primarily conducting the run-off of the Companies. The Companies are insurance and reinsurance companies that wrote insurance business primarily through the London insurance market until they went into run-off in 1992. At all times, the Companies' "nerve center" has been in England. Moreover, for approximately 23 years, the Companies have been subject to a run-off process managed in England. See Verified Petition ¶ 4. For approximately 18 years, that run-off has been taking place under the Original Scheme, which is a creation of English law, sanctioned by an English court, and managed by personnel located in England. See Verified Petition ¶¶ 4, 22-25, 31.

31.     Consequently, England is the only jurisdiction that is readily ascertainable by third parties as the Companies' respective COMIs. See Bear Stearns, 374 B.R. at 130 (noting that debtors' center of main interests is where the debtors "conduct the administration of their interests on a regular basis and is therefore ascertainable by third parties"). Because the evidence establishes that the Companies' respective COMIs are located in England, the English Proceedings should be recognized as a foreign main proceeding.

## IV.     The Requested Relief Should be Granted

32.     All of the relief sought by the Verified Petition, including enforcement of the Amending Scheme in the United States, is available and should be granted. As set forth below,

---

[6]     Moreover, COMI can be premised on liquidation activities, which in this case are located in England. See In re Fairfield Sentry Ltd., 714 F.3d at 137 ("We hold that any relevant activities, including liquidation activities and administrative functions, may be considered in the COMI analysis.").

certain of the requested relief is automatically available under section 1520 of the Bankruptcy

Code, which provides for certain automatic relief upon recognition of a foreign main proceeding.

See 11 U.S.C. § 1520.[7]   Other portions of the requested relief are available under section 1521 of

the Bankruptcy Code, which provides this Court with discretion to grant additional relief upon

recognition of a foreign proceeding.  See 11 U.S.C. § 1521.

A.      The Petitioners are Entitled to Relief under Section 1520

33.     Upon recognition of a foreign main proceeding, certain relief is automatically

granted as a matter of right.  See In re Rede Energia S.A., 515 B.R. at 89 ("If a foreign case is

recognized as a foreign main proceeding, as it was here, certain relief automatically goes into

effect, pursuant to 11 U.S.C. § 1520 . . . ."); 11 U.S.C. § 1520.  This relief includes, among other

things, imposition of an automatic stay with respect to the foreign debtor and all of its property in

the United States.  See 11 U.S.C. § 1520(a)(l) ("Upon recognition of a foreign proceeding that is

a foreign main proceeding . . . sections 361 and 362 apply with respect to the debtor and the

property of the debtor that is within the territorial jurisdiction of the United States.").  As

---

[7]   If this Court were to conclude that any of the requested relief is not available as a matter of right under section 1520 or at this Court's discretion under section 1521, relief may be granted pursuant to section 1507 of the Bankruptcy Code.  Section 1507 authorizes this Court to "provide additional assistance to a foreign representative under [the Bankruptcy Code] or under other laws of the United States." 11 U.S.C. § 1507.  In deciding whether to extend relief under section 1507, this Court must consider principles of comity and determine whether the requested relief would reasonably assure: (a) just treatment of the Companies' creditors and equity holders; (b) protection of the Companies' United States creditors against prejudice and inconvenience in claim processing; (c) prevention of preferential or fraudulent dispositions of the Companies 'property; and (d) distribution of the Companies' property substantially in accordance with the Bankruptcy Code's priority scheme.  See id.  "These provisions embody the protections that were previously contained in section 304 of the Bankruptcy Code . . . ." In re Rede Energia S.A., 515 B.R. 69, 95 (Bankr. S.D.N.Y. 2014).  Given the long history of English schemes of arrangement being recognized and virtually identical relief being granted under former section 304, there can be no doubt that these criteria are satisfied.  See, e.g., In re Petition of Dan Yoram Schwarzmann, as Adm'r of Folksam Int'l Ins. Co. (UK) Ltd., No. 02-14070 (SCC) (Bankr. S.D.N.Y. Aug. 6, 2013); In re Unione Italiana (UK) Reinsurance Co. Ltd., No. 04-17989 (Bankr. S.D.N.Y. June 8, 2005); Aviation & General Ins. Co. Ltd., No. 04-13499 (Bankr. S.D.N.Y. Aug. 5, 2004); In re Ludgate Ins. Co. Ltd., No. 04-10590 (Bankr. S.D.N.Y. Apr. 8, 2004).

CPAM: 6413012.33

established herein, the English Proceedings are entitled to recognition as foreign main proceedings.   Accordingly, the Petitioners, the Companies and the English Proceedings are entitled to all relief that is automatically available upon recognition of a foreign main proceeding, including imposition of the automatic stay with respect to all of the Companies' property in the United States.

B.        The Petitioners are Entitled to the Relief Requested under Section 1521

34.        In addition to the relief that is automatically provided by section 1520, the Petitioners seek a variety of relief under section 1521 of the Bankruptcy Code to assist in the effective implementation of the Amending Scheme.   Upon recognition of a foreign proceeding, at the request of the foreign representative, the Court may grant, with certain express exceptions, "any appropriate relief," including "any additional relief that may be available to a trustee" that the Court determines that doing so is necessary to effectuate the purpose of Chapter 15 and to protect the assets of the debtor or the interests of the creditors.  11 U.S.C. § 1521(a).

35.        As this Court recently reaffirmed, appropriate relief under section 1521 includes "enforcing a foreign confirmation order, including the request for an injunction of acts in contravention of such order . . . ."  In re Rede Energia S.A., 515 B.R. at 89.  Indeed, section 1521 explicitly authorizes this Court to grant injunctive relief, provided that the foreign representative demonstrates that the traditional standards for issuance of an injunction have been met.  See 11 U.S.C. § 1521(e).  Those standards require that a court consider whether: (i) the plaintiffs are likely to succeed on the merits of their claims; (ii) there is no adequate remedy at law; and (iii) the balance of equities favors granting such relief.  Travellers Int'l AG v. Trans World Airlines, Inc., 722 F. Supp. 1087, 1096 (S.D.N.Y. 1989), aff'd, 41 F.3d 1570 (2d Cir. 1994); New York State Nat'l Org. for Women v. Terry, 704 F. Supp. 1247, 1262 (S.D.N.Y.), aff'd as modified, 886 F.2d 1339 (2d Cir. 1989), cert. denied, 495 U.S. 947 (1990).

17

36.     Here, the Petitioners have requested a variety of injunctive relief that is designed to assist in the implementation of the Amending Scheme by enforcing the Sanction Order in the United States and "prevent[ing] individual American creditors from arrogating to themselves property belonging to the creditors as a group." In re Banco Nacional de Obras y Servicios Publicos, S.N.C., 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988). Because the Petitioners satisfy all of the requirements for injunctive relief, this relief should be granted.

i.     *Petitioners Have Demonstrated a Likelihood of Success on the Merits*

37.     As described herein, the Petitioners have demonstrated a likelihood of success as to the merits of the Verified Petition. First, the Companies have property in the United States and are therefore entitled to be debtors under the Bankruptcy Code. Second, these cases are proper under Chapter 15 of the Bankruptcy Code. Third, the English Proceedings are pending in England, where the Companies have their respective COMIs, and are therefore entitled to recognition as foreign main proceedings. Finally, and as set forth below, neither recognition nor any of the other relief sought herein would be manifestly contrary to the public policy of the United States. Accordingly, the Petitioners are likely to succeed in any dispute regarding the merits of the Verified Petition.

ii.     *No Adequate Remedy at Law*

38.     Irreparable harm is one basis for establishing the inadequacy of any legal remedy. Travellers, 722 F. Supp. at 1096. Courts consistently hold that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." In re Lines, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988). Moreover, disruption of the orderly determination of claims and the fair distribution of assets of an estate constitutes irreparable harm. See Victrix S.S. Co. S.A. v. Salem Dry Cargo A.B., 825 F.2d 709, 713-14 (2d Cir. 1987). Finally, irreparable harm has been found where allowing litigation to go forward would: (i) threaten the

18

assets of a foreign estate; (ii) subject a foreign representative to a default judgment; or (iii) divert funds needed for the purpose of maximizing value for the estate's creditors.  See In re Gercke, 122 B.R. 621, 626 (Bankr. D.C. 1991).

39.    Absent the relief requested, the Petitioners and the Companies may be forced to choose between a number of unappealing alternatives, any one of which would constitute irreparable harm.  If Scheme Creditors in the United States are not enjoined, assets of the Companies' estates may be prematurely pieced out and the orderly determination of Claims and the fair distribution of assets in the foreign proceeding will be severely disrupted.  To prevent such a premature piecing-out, the Companies may be forced to expend finite resources of the Companies' estates in defense of attachment and other similar actions by Scheme Creditors.  As noted above, such an expenditure of limited estate resources in defense of creditor attachment efforts would itself constitute irreparable harm to the Companies and their creditor bodies.  See In re Gercke, 122 B.R. at 626.  Alternatively, the Companies could forego their defenses altogether, resulting in irreparable harm in the form of default judgments and affording unfair advantage to some Scheme Creditors to the detriment of others.  Id.; In re Lines, 81 B.R. at 270. Thus, unless the relief requested is granted, the Companies' estates and their Scheme Creditors will suffer irreparable harm.

iii.    *The Balance of Equities Tips Decidedly in Favor of the Petitioners*

40.    A permanent injunction enforcing the Amending Scheme in the United States will cause little or no hardship to United States Scheme Creditors.  Rather, all of the Companies' Scheme Creditors—including United States Scheme Creditors—will benefit from the injunction, which will further the Petitioners' efforts to preserve and maximize the value of the Companies' estates and complete the global resolution of Scheme Liabilities.

41.     Enforcement of the Amending Scheme in the United States will ensure that the run-off of the Companies is centralized in a single forum.   Centralization of the run-off in England will benefit all Scheme Creditors by "prevent[ing] conflicting judgments from different courts and . . . harmoniz[ing] all of the creditors' interests with one another." Fidelity Mortg. Investors v. Camelia Builders, Inc., 550 F.2d 47, 55 (2d Cir. 1976), cert. denied, 429 U.S. 1093, and reh'g denied, 430 U.S. 976 (1977).  As this court has previously observed, "the foreign court which presides over the original proceeding is in the best position to assess where and when claims should be liquidated so as to conserve estate resources and maximize the assets available for distribution." In re Bird, 222 B.R. 229, 233 (Bankr. S.D.N.Y. 1998) (citation omitted); see also Armco Inc. v. North Atlantic Ins. Co. (In re Bird), 229 B.R. 90, 94 (Bankr. S.D.N.Y. 1999) (counterclaims asserted against debtor in adversary proceeding prohibited by preliminary injunction and should be determined in the foreign proceeding).

42.     In contrast, without the requested injunctive relief, there can be no equitable and orderly distribution of the Companies' estates pursuant to a unified, comprehensive plan. Notwithstanding that the High Court has sanctioned the Amending Scheme in England, the Amending Scheme will not become effective unless this Court issues "an order enforcing the Amending Scheme in the United States in a form satisfactory to the Petitioners . . . ." Bannister Declaration ¶ 25.   Without such a unified and comprehensive plan, it will be impossible to maximize the value of the Companies' assets and provide equal treatment to Scheme Creditors. Cf. In re Rede Energia S.A., 515 B.R. at 94.   Such an outcome would be contrary to the Amending Scheme as well as to the fundamental purpose of the Bankruptcy Code. See Cunard Steamship Co. Ltd. v. Salen Reefer Services A.B., 773 F.2d 452, 459 (2d Cir. 1985) (the "guiding premise of the Bankruptcy Code . . . is the equality of distribution of assets among

20

creditors."). Accordingly, the balance of the equities tips decidedly in favor of the Petitioners

and the requested relief is appropriate under section 1521 of the Bankruptcy Code.

## V.   Recognition of the English Proceedings Would Not be Manifestly Contrary to the Public Policy of the United States

43.    Section 1506 of the Bankruptcy Code provides that nothing in Chapter 15 requires

this Court to take any action that would be manifestly contrary to the public policy of the United

States.[8]   11 U.S.C. § 1506.   "[F]ederal courts in the United States have uniformly adopted the

narrow application of the public policy exception."   In re OAS S.A., 533 B.R. 83, 103 (Bankr.

S.D.N.Y. 2015) (citing Fairfield Sentry, 714 F.3d at 139).   The relief requested by the Petitioners

is not manifestly contrary to, but rather consistent with, United States public policy.

44.    As an initial matter, recognition of a scheme of arrangement is not manifestly

contrary to United States public policy.   Courts in this District have a well-established history of

enforcing schemes of arrangement pertaining to foreign insurance companies through Chapter 15

of the Bankruptcy Code.   See, e.g., In re Global General and Reinsurance Company Limited, No.

11-10327 (RDD) (Bankr. S.D.N.Y. March 10, 2011); In re Baloise Ins. Co. Ltd., No. 10-15358

(JMP) (Bankr. S.D.N.Y. Dec. 9, 2010).[9]   Enforcement of schemes of arrangement concerning

---

[8]    As the legislative history explains, "[section 1506] follows the Model Law article 5 exactly . . . and has been narrowly interpreted on a consistent basis in courts around the world.   The word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States."   H.R. REP. 109-31 pt. 1 (2005).

[9]    See also In re Allianz Global Corporate & Specialty (France), No. 10-14990 (SMB) (Bankr. S.D.N.Y. Nov. 10, 2010); In re Sphere Drake Insurance Limited, No. 08-12832 (Bankr. S.D.N.Y. Sept. 11, 2008); In re Greyfriars Insurance Company Limited, et al., Nos. 07-12934 to 07-12944 (Bankr. S.D.N.Y. Oct. 23, 2007); In re Compagnie Européenne d'Assurances Industrielles S.A., No. 07-12009 (Bankr. S.D.N.Y. Sept. 26, 2007); In re Oslo Reinsurance Company (UK) Limited, et al., No. 07-12211 (Bankr. S.D.N.Y. Aug. 29, 2007); In re Axa Ins. UK PLC, et al., Nos. 07-12110 to 07-12113 (Bankr. S.D.N.Y. Aug. 15, 2007; In re Arion Ins. Co. Ltd., No. 07-12108 (Bankr. S.D.N.Y. Aug. 9, 2007); In re Europäische Rückversicherungs-Gesellschaft in Zürich, No. 06-13061 (Bankr. S.D.N.Y. Jan. 22, 2007); In re Gordian Runoff (UK) Ltd., No. 06-11563 (Bankr. S.D.N.Y. Aug. 29,

(Cont'd on following page)

insurance companies is also consistent with prior practice in this District under former section 304 of the Bankruptcy Code.  See, e.g., Hopewell, 238 B.R. 25, aff'd, 275 B.R. 699 (S.D.N.Y. 2002).[10]

45.    Further, it is well established that one of the fundamental goals of the Bankruptcy Code is the centralization of disputes involving the debtor.  See, e.g., In re Ionesphere Clubs, Inc., 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code 'provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court . . .'").  As one court has noted, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction."  Cornfeld v. Investors Overseas Servs., Ltd., 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (recognizing that Canadian liquidation proceeding would not violate laws or public policy of New York or the United States).

46.    The Amending Scheme is similar to bankruptcy proceedings in that it provides for a centralized process to (i) assert and resolve claims against an estate and (ii) make distributions to creditors.  Enforcing the Amending Scheme, enjoining certain actions against the Companies and granting the relief requested would assist the implementation and further administration of the Amending Scheme.  These consequences are demonstrably consistent with the public policy of the United States.  Indeed, as noted above, the relief requested is similar if not virtually identical to the relief granted in other ancillary cases under Chapter 15 and former section 304.

(Cont'd from preceding page)

2006); In re Lion City Run-off Private Ltd., No. 06-10461 (Bankr. S.D.N.Y. Apr. 13, 2006); In re La Mutuelle du Mans, Assurance IARD, No. 05-60100 (Bankr. S.D.N.Y. Dec. 7, 2005).

[10]    See also In re Unione Italiana (UK) Reinsurance Co. Ltd., No. 04-17989 (Bankr. S.D.N.Y. June 8, 2005); Aviation & General Ins. Co. Ltd., No. 04-13499 (Bankr. S.D.N.Y. Aug. 5, 2004); In re Ludgate Ins. Co. Ltd., No. 04-10590 (Bankr. S.D.N.Y. Apr. 8, 2004); In re The Nichido Fire & Marine Ins. Co. Ltd., No. 01-15987 (Bankr. S.D.N.Y. Feb. 13, 2002).

CPAM: 6413012.33

47.     Further, enforcement of the Amending Scheme would be consistent with the purpose of Chapter 15 and its predicate, the UNCITRAL Model Law on Cross-Border Insolvency.  Section 1501 of the Bankruptcy Code provides, in pertinent part that:

> The purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of -
>
> (1)     cooperation between -
>
>          * * *
>
> (B)     the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>
>          * * *
>
> (3)     fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>
> (4)     protection and maximization of the value of the debtor's assets.

11 U.S.C. § 1501.

48.     The relief requested by the Petitioners is consistent with, and critical to effectuate, the objectives of Chapter 15 for several reasons.  First, enforcement of the Amending Scheme would foster cooperation between the High Court and United States courts because it would enable the effective implementation of the High Court's order sanctioning the Amending Scheme.

49.     Second, enforcement of the Amending Scheme would promote the fair and efficient administration of a cross-border debt-adjustment procedure that protects the interests of all creditors and interested entities.  By enforcing the Amending Scheme in the United States, this Court would help ensure that the run-off of the Companies and the process of resolving claims against the Companies would be centralized in England.  Scheme Creditors would be required to assert their claims against the Companies in accordance with the terms of the

CPAM: 6413012.33

Amending Scheme and any disputes would be subject to the uniform jurisdiction of one tribunal, the High Court, as intended by the Amending Scheme, in a manner that harmonizes the interests of the Scheme Creditors, including those in the United States.  If the Scheme Creditors are not effectively stayed, the uniform and orderly determination and settlement of Claims may be jeopardized.

50.     Finally, the relief requested would protect the Companies' assets.  Absent such relief, the Companies' assets may be depleted and available resources may be expended unnecessarily to defend collection and other actions brought in the United States in contravention of the Amending Scheme and the High Court's order sanctioning the Amending Scheme.  Accordingly, the relief requested would further the objectives of Chapter 15 by assisting the implementation of the Amending Scheme.

## CONCLUSION

For the foregoing reasons, the Petitioners respectfully requests that this Court grant the relief requested.

Dated:  New York, New York
        November 16, 2015

**CHADBOURNE & PARKE LLP**

By: */s/ Howard Seife*
    Howard Seife
    A Member of the Firm
    1301 Avenue of the Americas
    New York, New York 10019
    (212) 408-5215

    *Counsel for the Petitioners*

24